The STATE of Ohio, Appellee,

v.

HOWARD, Appellant.

[Cite as *State v. Howard* (1992), 79 Ohio App.3d 705.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59855.

Decided May 1, 1992.

*Stephanie Tubbs Jones,* Prosecuting Attorney, and *Edward Feran,* Assistant Prosecuting Attorney, for appellee.

*Warren L. McClelland,* Assistant Public Defender, for appellant.

SPELLACY, Judge.

On September 30, 1987, defendant-appellant Berdee R. Howard ("appellant") was indicted by the Cuyahoga County Grand Jury for three counts of passing bad checks, in violation of R.C. 2913.11. At her arraignment on October 15, 1987, appellant pleaded not guilty. Immediately, thereafter, appellant was taken into custody by United States marshals on a federal warrant.

On November 4, 1987, appellant's case was called for a pretrial. Appellant failed to appear because she was being held in the Ottawa County Jail. Thus, the trial court ordered the sheriff's department to place a detainer on her. On May 4, 1988, a detainer was sent to the Federal Correctional Institution in Lexington, Kentucky. Apparently, appellant was serving a sentence for a federal parole violation. She remained there until June 14, 1989.

On June 29, 1989, a capias was returned and appellant was placed in custody in Cuyahoga County. Appellant had just been released from federal custody. On July 18, 1989, appellant was released on $1,000 personal bond. On October 25, 1989, appellant filed a motion to dismiss for lack of a speedy trial.

On November 9, 1989 and December 5, 1989, the trial court conducted a hearing on appellant's motion to dismiss.[1] Appellant filed a timely notice of appeal and subsequently raised the following assignment of error:

"The trial court erred by overruling appellant's motion to dismiss for failure to provide a speedy trial as required by the United States and Ohio Constitutions and the Ohio Revised Code."

In her motion to dismiss, appellant only argued that the state failed to bring her to trial within the statutorily mandated two hundred seventy days.

R.C. 2945.71(C)(2) and (E) require the state to bring a felony defendant to trial within two hundred seventy days of arrest, or within ninety days if the accused is held in jail in lieu of bail on the pending charges.

Once a defendant has demonstrated that two hundred seventy speedy-trial days have expired under R.C. 2945.71(C)(2), she has established a *prima facie* case for dismissal under R.C. 2945.73(B). *State v. Geraldo* (1983), 13 Ohio App.3d 27, 13 OBR 29, 468 N.E.2d 328. The state then bears the burden of demonstrating any tolling or extension of time under R.C. 2945.72. *State v. Bowman* (1987), 41 Ohio App.3d 318, 535 N.E.2d 730.

The two-hundred-seventy-day period set forth in R.C. 2945.71, within which a criminal defendant must be tried, is tolled pursuant to R.C. 2945.72. R.C. 2945.72 provides in relevant part:

"The time within which an accused must be brought to trial, or in the case of felony, to preliminary hearing and trial, may be extended only by the following:

"(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

"* * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

"* * *

"(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"

---

1. Appellant failed to file a transcript of the proceedings regarding her motion to dismiss for lack of speedy trial.

In the instant case, appellant was incarcerated in several other facilities, including Ottawa County, Ohio, West Virginia, and Kentucky. Her incarceration in other locations lasted from October 15, 1987 until June 14, 1989.

There is no doubt that appellant was unavailable for trial from the time she was taken into custody by the United States marshals, immediately after her arraignment, until her release from the federal correctional institute in Lexington, Kentucky, on June 14, 1989.

■ Further, appellant failed to provide this court with a transcript, or any other evidence, that would have demonstrated that the state failed to exercise reasonable diligence to secure her availability. It is the appellant's responsibility to include such evidence in the appellate record so that the claimed error is demonstrated to this court. *Bates & Springer, Inc. v. Stallworth* (1978), 56 Ohio App.2d 223, 10 O.O.3d 227, 382 N.E.2d 1179.

■ Therefore, we find that from the time appellant was taken into custody by the United States marshals on October 15, 1987 until the time of her release from federal prison on June 14, 1989, the time was tolled under R.C. 2945.72(A), due to her unavailability.

After appellant was returned to the jurisdiction of Cuyahoga County and the instant criminal proceedings went forward, appellant requested and received numerous continuances. Appellant received continuances in order to file a motion to dismiss and because her attorney was ill. Eventually, appellant filed a motion to dismiss for lack of speedy trial.

■ We find that as a result of appellant's continuances and the filing of her motion to dismiss, the statutory period was tolled pursuant to R.C. 2945.72(E) and (H). Combining this period of time with the time tolled as a result of her unavailability, we conclude that appellant was properly brought to trial within the statutory period of two hundred seventy days. Thus, we determine that the state complied with R.C. 2945.71(C)(2).

■ In her appellate brief, appellant argues that the trial court should have granted her motion to dismiss pursuant to R.C. 2941.401 and/or 2963.30. However, we need not address this argument, since she is raising it on appeal for the first time. See *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364. In her motion to dismiss, appellant argued only that she was denied her right to a speedy trial. There is nothing in the record to indicate that appellant requested the trial court to dismiss the charges against her pursuant to R.C. 2941.401 and/or 2963.30.

■ Finally, we must presume the validity of the trial court's order denying appellant's motion to dismiss, since appellant failed to provide this court with

a transcript of the proceedings concerning said motion. See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384. There is nothing in the record to support appellant's claim that she was denied her right to a speedy trial under R.C. 2945.71. There is also nothing in the record to demonstrate that the state failed to comply with either R.C. 2941.401 or 2963.30.

For the foregoing reasons, we conclude that the trial court did not err in denying appellant's motion to dismiss.

Appellant's assignment of error is without merit and is overruled.

The trial court's judgment is affirmed.

*Judgment affirmed.*

MATIA, C.J., concurs.

HARPER, J., dissents.

HARPER, Judge, dissenting.

I must respectfully dissent from the majority's arrival at an affirmance by sidestepping the issues presented by the parties. A careful review of the record cries out for a reversal of the trial court's decision and the vacation of appellant's sentence. Each time we sidestep issues to arrive at an expected decision, justice is sidestepped, and I am concerned.

The record shows that on October 15, 1987, Berdee Howard was arraigned on charges of passing bad checks, after being indicted on September 30, 1987. At the conclusion of Howard's arraignment, she was turned over to the United States marshal in connection with a federal warrant issued against her for parole violation. The U.S. marshal transported her to Port Clinton, Ohio, where she was held on the federal warrant.

On October 28, 1987, Howard failed to appear for a scheduled pretrial. The attorney for defendant notified the court that Howard was held in the Ottawa County Jail. The trial court issued a capias on Howard and ordered the sheriff's department to place a detainer on her.

On November 1, 1987, Howard was transported to the Lorain County Jail on a pending charge. While she was in the Lorain County Jail, a detainer was placed on her. On January 12, 1988, Howard was transported by the U.S. marshal to the Federal Correctional Institute ("FCI") in Alderson, West Virginia, to serve a jail sentence imposed on her for parole violation. At all times, Ohio authorities knew the whereabouts of Howard.

On March 17, 1988, Howard was transferred from FCI in Alderson to the FCI in Lexington, Kentucky. On June 16, 1989, Howard was transferred to

Fayette County Jail in Fayette, Kentucky, where she was held on a warrant from Ohio.

On June 28, 1989, she was picked up by the Cuyahoga County Sheriff's Department and taken to the Cuyahoga County Jail where she remained until a bond was posted on July 18, 1989.

Appellant's sole proposition of law is as follows:

"The trial court erred by overruling appellant's motion to dismiss for failure to provide a speedy trial as required by the United States and Ohio Constitutions and the Ohio Revised Code."

Appellant, in her sole proposition of law, argues that she was entitled to a discharge because the state failed to bring her to trial within the statutory period. R.C. 2945.71(C) states as follows:

"(C) A person against whom a charge of felony is pending:

"(1) Notwithstanding any provisions to the contrary in Criminal Rule 5(B), shall be accorded a preliminary hearing within fifteen consecutive days after his arrest if the accused is not held in jail in lieu of bail on the pending charge or within ten consecutive days after his arrest if the accused is held in jail in lieu of bail on the pending charge;

"(2) Shall be brought to trial within two hundred seventy days after his arrest."

Appellant was charged with three counts of passing bad checks pursuant to R.C. 2913.11(C), which is a fourth degree felony. She was therefore required to be brought to trial within two hundred seventy days unless any statutory exception applied. The state, in its first reply to appellant's contention, argues that since appellant failed to provide this court with the transcript of proceedings on the speedy trial hearing, this court must presume the validity of the trial court's ruling and hold that there is nothing in the record to support appellant's claim for a speedy trial violation. The state cites *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384, as controlling. I must first address the state's transcript argument.

It is well-settled law in Ohio that the duty to provide a transcript for appellate review falls upon the appellant. *State v. Skaggs* (1978), 53 Ohio St.2d 162, 7 O.O.3d 243, 372 N.E.2d 1355; *Knapp v. Edwards Laboratories, supra.* This principle is recognized in App.R. 9(B), which provides in pertinent part that:

" * * * the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings *not already on file as he deems necessary for inclusion in the record* * * *." (Emphasis added.)

The *Knapp* court held that:

"*When portions of the transcript necessary for resolution of assigned errors are omitted from the record,* the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." (Emphasis added.) *Knapp, supra,* 61 Ohio St.2d at 199, 15 O.O.3d at 220, 400 N.E.2d at 385.

Thus, the transcript of proceedings becomes essential as required by App.R. 9(B) and the *Knapp* holding where there is an insufficient record to aid the reviewing court in properly addressing the errors assigned. A transcript is not essential when it is not necessary for the resolution of the assigned errors. In the within case, appellant filed a written motion for dismissal for failure to bring her to trial within the statutory period. The trial court filed a judgment entry denying appellant's motion. There is, therefore, nothing the transcript will reveal that is not already in the written motion and the judgment entry, not to mention all the other documents indicating appellant's various transfers from one prison to another. Since this court has the necessary documents on file to address appellant's assigned error, the state's argument requiring that appellant provide a transcript of hearing is without merit.

I shall address appellant's argument on R.C. 2963.30, even though she did not address it in her motion to dismiss at the trial level, only because of the implication of the statute in the state's action and the state's exclusive reliance on it in arguing that its action was proper.

Appellant was indicted on September 30, 1987. In order to comply with the statutory provisions of R.C. 2945.71 *et seq.,* appellant was to be brought to trial sometime in the third week of October 1988, unless any statutory extensions applied. R.C. 2945.72 provides in pertinent part as follows:

"The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended *only* by the following:

"(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, *provided that the prosecution exercises reasonable diligence to secure his availability* [.]" (Emphasis added.)

The language of the statute is clear on its face. The granting of extensions are limited to those circumstances enumerated; anything else is unacceptable no matter how good the intentions. *State v. Mitchell* (June 13, 1991), Cuyahoga App. No. 58447, unreported, 1991 WL 106037; *State v. Geraldo*

(1983), 13 Ohio App.3d 27, 13 OBR 29, 468 N.E.2d 328. Appellant's counsel informed the court on November 4, 1987 that she was being held in the Ottawa County Jail and could not be present in court. The state argues that appellant's incarceration in another jurisdiction extends the time she should be brought to trial within R.C. 2945.72.

A defendant who is incarcerated in another jurisdiction is denied a statutory right to a speedy trial when he is not brought to trial within the time prescribed by the statute unless the state demonstrates a precise exercise of reasonable diligence made to procure his presence for trial. *State v. Coatoam* (1975), 45 Ohio App.2d 183, 74 O.O.2d 229, 341 N.E.2d 635; see, also, *Commonwealth v. Hamilton* (1972), 449 Pa. 297, 297 A.2d 127.

The majority reasons as follows:

"There is no doubt that appellant was unavailable for trial from the time she was taken into custody by the United States marshals, immediately after her arraignment, until her release from the Federal Correctional Institute in Lexington, Kentucky, on June 14, 1989.

"Further, appellant failed to provide this court with a transcript, or any other evidence, that would have demonstrated that the state failed to exercise reasonable diligence to secure her availability. It is the appellant's responsibility to include such evidence in the appellate record so that the claimed error is demonstrated to this court."

The majority's simplistic reasoning and the shifting of the burden of showing due diligence to appellant is contrary to the plain language of the statute and case law. See *Coatoam, supra.* Where a defendant, as in the within case, files a motion stating that she was not brought to trial within a specified statutory time and the record shows that the state is aware of the defendant's whereabouts, the burden of showing due diligence to secure the presence of the accused for trial is on the state and does not shift to the accused for any reason.

In the within case, the record is devoid of evidence of any attempt made by the state to secure appellant from the Ottawa County Jail. Appellant was subsequently transferred to the Federal Correction Institution in Lexington, Kentucky. The record indicates that the Cuyahoga County authorities sent a "detainer"[1] to the FCI in Lexington, Kentucky, on May 4, 1988. No further action was taken by the state to secure appellant's presence in Ohio until June 29, 1989, after the expiration of the two hundred seventy days when she should have been brought to trial. No explanation was given why it took the

---

1. See my discussion *infra* on the issue of the "detainer" issued by the state.

state two hundred ninety days to bring appellant to Ohio after it placed a detainer on her. The incarceration of a defendant in another jurisdiction can provide a valid reason for granting an extension only after the state's exercise of due diligence to bring the accused to trial is shown. In the within case, the state has failed to sustain its burden of showing that it exercised due diligence in attempting to secure appellant's presence at trial, two hundred ninety days after it placed a detainer on her and a total of five hundred thirty days after indictment. The state's four-line argument that "[t]he fact that the defendant was incarcerated in another jurisdiction coupled with the fact that the defendant did not comply with the statutory requirements of O.R.C. § 2963.30, bars her from challenging her conviction on speedy trial grounds" is unpersuasive and insufficient to show that it exercised reasonable diligence. As the United States Supreme Court held in *Dickey v. Florida* (1970), 398 U.S. 30, 51–52, 90 S.Ct. 1564, 1575–1576, 26 L.Ed.2d 26, 40:

"When is governmental delay reasonable? Clearly, a deliberate attempt by the government to use delay to harm the accused, or governmental delay that is 'purposeful or oppressive,' is unjustifiable. *Pollard v. United States*, supra, [352 U.S. 354] at 361 [77 S.Ct. 481 at 486], 1 L.Ed.2d [393] at 399. See also *United States v. Provoo*, supra [17 F.R.D. 183]. The same may be true of any governmental delay that is unnecessary, whether intentional or negligent in origin. A negligent failure by the government to ensure speedy trial is virtually as damaging to the interests protected by the right as an intentional failure; when negligence is the cause, the only interest necessarily unaffected is our common concern to prevent deliberate misuse of the criminal process by public officials. Thus the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoided—whether it was unnecessary. To determine the necessity for governmental delay, it would seem important to consider, on the one hand, the intrinsic importance of the reason for the delay, and, on the other, the length of the delay and its potential for prejudice to interests protected by the speedy-trial safeguard. For a trivial objective, almost any delay could be reasonably avoided. Similarly, lengthy delay, even in the interest of realizing an important objective, would be suspect." See, also, *Commonwealth v. Kovacs* (1977), 250 Pa.Super. 66, 378 A.2d 455.

Having failed to offer any reason why it failed to extradite appellant, the state has violated appellant's right to be brought to trial within the statutory period of two hundred seventy days.

The discharge of a defendant for denial of a speedy trial is a drastic step; however, in the within case, because further proceedings against appellant would harm the interests protected by the Speedy Trial Clause of the United

States and Ohio Constitutions and statute, I would sustain appellant's proposition of law.

Now I shall turn to the issue of the Interstate Agreement on Detainers ("IAD"), R.C. 2963.30. The state argues that appellant's failure to comply with the requirements of IAD bars her from challenging her conviction on speedy trial grounds. As I noted *supra*, appellant's motion to dismiss was not based on R.C. 2963.30; however, I am compelled to address it because of the state's invocation of the IAD provisions through its actions in the trial court and the IAD's being the center of its defense on appeal, and the majority's failure to even acknowledge its implication in the within case.

R.C. 2963.30 states in pertinent part:

"Article II

"As used in this agreement:

"(a) 'State' shall mean a state of the United States:[;] the United States of America:[;] a territory or possession of the United States:[;] the District of Columbia:[;] the Commonwealth of Puerto Rico.

" * * *

"Article III

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall

promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his rights to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

"   *   *   *

### "Article IV

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated:[,] provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request:[,] and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

"(b) Upon receipt of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

"(c) In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

"   *   *   *

"Article V

"(a) In response to a request made under Article III or Article IV hereof, the appropriate authority in a sending state shall offer to deliver temporary custody of such prisoner to the appropriate authority in the state where such indictment, information or complaint is pending against such person in order that speedy and efficient prosecution may be had. If the request for final disposition is made by the prisoner, the offer of temporary custody shall accompany the written notice provided for in Article III of this agreement. In the case of a federal prisoner, the appropriate authority in the receiving state shall be entitled to temporary custody as provided by this agreement or to the prisoner's presence in federal custody at the place of trial, whichever custodian arrangement may be approved by the custodian.

"(b) The officer or other representative of a state accepting an offer of temporary custody shall present the following upon demand:

"(1) Proper identification and evidence of his authority to act for the state into whose temporary custody the prisoner is to be given.

"(2) A duly certified copy of the indictment, information or complaint on the basis of which the detainer has been lodged and on the basis of which the request for temporary custody of the prisoner has been made.

"(c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

The IAD is a uniform law which has been enacted by a majority of the states, the District of Columbia, and the federal government. It "prescribes procedures by which a prisoner may demand the prompt disposition of charges against him in a state other than the one in which he is imprisoned, as well as procedures by which a state may obtain for trial a prisoner who is incarcerated in another state." Annotation, Validity, Construction, and Application of Interstate Agreement on Detainers (1980), 98 A.L.R.3d 160.

The purpose of IAD is to counteract the uncertainties which obstruct programs of prisoner treatment and rehabilitation when a prisoner's status is clouded by the existence of untried charges on which detainers have been lodged. See *State v. Thompson* (1984), 19 Ohio App.3d 261, 19 OBR 414, 483 N.E.2d 1207; *People v. Housewright* (1978), 83 Mich.App. 346, 268 N.W.2d

401; see, also, *People v. Beamon* (1978), 83 Mich.App. 121, 268 N.W.2d 310. Thus, under Article III, the prisoner may demand final disposition of any untried indictments, informations or complaints filed against him.

The state argues that under Article III of the IAD, appellant was required to file a notice of her prison status, through the warden where she is incarcerated, to the state authorities before she can be protected by the IAD statute. The Summit County Court of Appeals held in *State v. Reitz* (1984), 26 Ohio App.3d 1, 26 OBR 168, 498 N.E.2d 163, that the defendant's compliance with R.C. 2963.30 is a prerequisite to the state's compliance with the speedy-trial statute. I have found decisions from other jurisdictions that tend to support this interpretation. *Baker v. Schubin* (1972), 72 Misc.2d 413, 339 N.Y.S.2d 360, holding that a detainee must comply with all of the statutory provisions promptly before indictment may be dismissed with prejudice for failure to bring him to trial. See, also, *McCrary v. Scully* (1989), 153 A.D.2d 629, 544 N.Y.S.2d 852; *Rhodes v. Commonwealth* (1981 Ky.), 622 S.W.2d 677, holding that defendant must comply with the IAD requirements before protection is accorded.

While I agree with these decisions that defendant must comply with the IAD procedural requirements, I am compelled to point out that the statute is required to be liberally construed so as to effectuate its purpose. Article IX. In light of the IAD provision for liberal construction, it must be acknowledged that circumstances may negate a strict requirement that defendant comply with all procedural provisions where such strict requirement will defeat the intent and purpose of the Act. The circumstances that might trigger a liberal interpretation must be decided on a case-by-case basis.

I do not intend this opinion to be interpreted as saying that a prisoner should do nothing, and receive the protection of IAD. I am saying that since the terms of the IAD place a more stringent burden on the prosecutor than do the federal and Ohio constitutional guarantees of speedy trial, the prisoner's substantial compliance with the requirements of application for relief under the Act is what is required before judicial relief may be had.

Article III(c) requires that the warden, commissioner of corrections, or other official where the defendant is in custody promptly inform him when a detainer is lodged against him and inform him of his rights to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

In the within case, the record shows that a detainer was lodged against appellant. However, there is no record that any official in the jurisdiction where the defendant was held ever informed the appellant of the detainer and her right to file a request for prompt disposition. It is my opinion that had

appellant requested a dismissal pursuant to R.C. 2963.30 at the trial level on the authority of Article V(c), she would have been entitled to have the indictment against her dismissed for the failure of the state to bring her to trial within one hundred eighty days. Article III(c) makes it clear that a defendant's obligation to file a request hinges on the official in the jurisdiction where he is held, informing him of the detainer and his right to file a request.

In the within case, since appellant neither invoked the protection of the IAD by filing the required notice nor argued in her motion to dismiss that she was not informed of the detainer, she is not protected by the one-hundred-eighty-day provision of Article III.

The Act, however, does not put all the burden on the defendant. Under Article IV, the state may initiate the process whereby a prisoner is returned to the state for trial. In the language of the Act, this latter process is begun by the state's lodging a detainer against the prisoner. See *Johnson v. Cuyler* (E.D.Pa.1982), 535 F.Supp. 466. The Act contains no definition of a "detainer." It has been otherwise defined as a "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." Senate Report 91–1356, 91st Cong., 2d Sess., 3 U.S.Code Cong. and Admin.News (1970), 4864, 4865. See, also, *People v. Browning* (1981), 108 Mich.App. 281, 310 N.W.2d 365.

It must, therefore, be determined whether the state's request constituted a detainer. I note that no Ohio court has attempted to define a "detainer"; however, from the congressional definition, bearing in mind what the statute intends to accomplish, "detainer" should not be defined to cause prejudice to a defendant's right or to the state's right to bring an accused to trial. Other jurisdictions have attempted to define "detainer" with the intent to satisfy the statutory purpose. A uniform definition has not been instituted and none will so easily be made; hence, substantial compliance on a case-by-case basis is essential. The Michigan court in *People v. Beamon* (1978), 83 Mich.App. 121, 268 N.W.2d 310, held that a letter from the recorder's court clerk to officials holding a prisoner, which advised of charges pending against an incarcerated defendant, was a detainer. The *Beamon* court also found that a writ of habeas corpus *ad prosequendum* was the equivalent of a detainer. *Id.*

The *Beamon* court's latter ruling was made in the face of a split of opinion in the federal circuit courts of appeals. Compare *Ridgeway v. United States* (C.A.6, 1977), 558 F.2d 357, with *United States v. Mauro* (C.A.2, 1976), 544 F.2d 588, the latter holding that such a writ constitutes a detainer. The United States Supreme Court in *United States v. Mauro* (1978), 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329, resolved the split. In *Mauro, supra,* the federal government filed three writs of habeas corpus *ad prosequendum* with

state authorities. The court held that "a writ issued by a federal court to state authorities, directing the production of a state prisoner for trial on criminal charges, is not a detainer within the meaning of the [Act] and thus does not trigger the application of the [Act]." *Id.* at 340, 348, 98 S.Ct. at 1834, 1841, 56 L.Ed.2d at 329, 339. However, the "United States is bound by the [Act] when it activates its provisions by filing a detainer against a state prisoner and then obtains his custody by means of a writ of habeas corpus *ad prosequendum*." *Id.*

The Supreme Court's holding in *Mauro, supra,* was necessarily limited to the issuance of a writ by federal authorities. The case *sub judice* presents a similar question, albeit here the state of Ohio is seeking the production of a federal prisoner. Therefore, to constitute a detainer sufficient to trigger the application of the Act, the state must file (1) a written official communication signed by a proper authority, (2) directed to the authorities of the institution in which a prisoner is serving a sentence, (3) advising that the prisoner is wanted to face pending criminal charges in another jurisdiction, and (4) stating substantially what are the charges against the prisoner in the requesting jurisdiction.

In the within case, I have seen nothing in the document which satisfies the IAD requirements of a detainer. There is a "capias on indictment" form, on the back of which is a handwritten notation stating "5/3/88 sent detainer Federal Corr. Instit. Lexington, Ky." Such form by its nature cannot constitute a "detainer." It stated: "To the Sheriff of our said county The State of Ohio, Cuyahoga County. We command you to take Berdee R. Howard if she be found within your bailiwick * * *." The reading of the form as is leads me to conclude that it is a form intended to be used in Cuyahoga County. Since the state failed to substantially comply with the requirements of R.C. 2963.30 (Article IV), its purported attempt to have sent a "detainer" requesting that appellant be brought to Ohio fails. The trial court, therefore, should have granted appellant's motion to dismiss for failure to bring her to trial within the statutory period pursuant to R.C. 2945.71 and R.C. 2945.72. The trial court's judgment should be reversed and appellant's sentence vacated.